IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

VERONICA JOHNSON
Individually and as a Personal Representative
of the Wrongful Death Beneficiaries of
BRANDON T. JOHNSON, SR., DECEASED,
and as Mother and Next Friend of B.T. JOHNSON,
a Minor and as Mother and Next Friend of
J. JOHNSON, a Minor

VS.                                       CIVIL ACTION NO. 2:09CV113-MPM-DAS

HANKOOK TIRE MFG. CO., LTD., a Foreign
Corporation; HANKOOK TIRE AMERICA CORP.,
a Foreign Corporation; FORD MOTOR COMPANY,
a Foreign Corporation; and JOHN DOES 1-10

## ORDER

This matter is before the court on motion of the plaintiff to compel Hankook Tire Mfg. Co., Ltd. to respond to interrogatories and requests for production of documents (# 163). After considering the motion and the response thereto, and after conducting a hearing on the matter, the court finds as follows:

With their motion, the plaintiff covers several areas and addresses several interrogatories and requests under each area. For purposes of clarity, the court will follow the order provided in the plaintiff's brief.

### Identification of Hankook Tires with Components Similar to Subject Tire

With these interrogatories and requests for production of documents, the plaintiff seeks information concerning Hankook tires other than the specific tire involved in the accident that led to the present action. That tire was a Steel Radial Sport King A/T produced in 2002. In her

1

complaint, the plaintiff alleges that Hankook utilized a defective design in the production of this tire. Specifically, the plaintiff alleges that the "attachment of the tread to the main body of the tire was inadequate or insufficient to maintain the integrity of the tire under normal use." In other words, it is the plaintiff's theory that her accident occurred after the tread belt on the subject tire separated from the body of the tire – tread belt separation. To support her claim of defective design, the plaintiff points to the inner liner, the skim stock, the belt edge wedge, the antioxidant/antidegradant AO package, and the absence of a nylon overlay. The plaintiff also alleges a manufacturing defect. In support of this position, plaintiff's counsel pointed to photographs showing what he contended were defectively (or unevenly) cut portions of the belts within the tire.

Consequently, the plaintiff propounded discovery attempting to determine whether Hankook produced other tires using any of the same components she alleged were defective in the accident tire. She argued that such information was discoverable because identification of these other tires with at least some of the same components would support her position that they are substantially similar to the accident tire. As a result – according to the plaintiff – once other tires with similar tread separation countermeasures are identified and their tread separation rates known, she may then introduce these tires into evidence at trial to show that Hankook could have foreseen problems in the accident tire. The defendants responded, arguing that accumulating all information about all types of tires that may have one component in common with the accident tire, and using this information to decide which component of the tire allegedly failed resulting in tread separation, was unduly burdensome and a "fishing expedition." To an extent, the court agrees.

2

The court agrees that to require production of tires with similar components alone would be inappropriate. Before the court will order any responses or production, there must be at least *some* evidence that a particular component played a role in the accident. The plaintiff is correct that Rule 26 provides for discovery that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The court is also aware that discovery "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. That does not mean, however, that a plaintiff can make any claim she chooses with no evidence to support such a claim and then conduct wide ranging discovery to determine whether she guessed right. In the present case, the plaintiff contends there was a design defect and a manufacturing defect. The plaintiff has control of the accident tire, and her expert has already provided a forty-six page report detailing his opinions as to why the tire failed. While this report is not before the court, portions of it were discussed during the hearing, and thus, the court will consider those portions in conjunction with the complaint to decide whether certain interrogatories and requests for production are discoverable.

The plaintiff contends that "similar tires" would be tires that utilize the same skim stock, wedge material, inner liner, and/or (AO) package as the accident tire. As to the wedge material and inner liner, however, there is nothing before the court to indicate the accident tire failed because of a defect in either component. As defense counsel pointed out, the plaintiff's expert says nothing about "necking" or "polishing," which could potentially indicate a problem with the wedge material. Nor does the expert mention the tire's inner liner. Plaintiff's counsel spent a great deal of time and effort explaining how defective wedge material and inner liners could cause problems, and his explanation helped the court immensely. However, counsel's arguments

and explanations are not evidence, and the court needs *something* – however minimal – to support an allegation made in a complaint before it will order a defendant to expend time and resources responding to discovery.

Contrary to the plaintiff's position that "similar tires" are any tires with similar components, the defendant argues that only tires sharing a common green internal specification can be considered same or similar tires. The Code of Federal Regulations defines green tires as "tires that are produced to the same internal specification but that have, or may have, different external characteristics and may be sold under different tire line names." 49 C.F.R. § 579.4. The defendant continued that how a particular component performs in a tire is totally dependant upon all of the other components in a tire and how they work together per their specifications. Comparing tires that do not share common green internal specifications as defined by the CFR is, therefore, useless to the trier of fact. As such the plaintiff's discovery requests should be limited to the subject model and size tire and any tire that shares a common green internal specification as opposed to any tire that might share a generic component. After considering both positions, the court finds the defendant's position the more compelling one. Accordingly, any discovery ordered *infra* addressing "similar" tires will be confined to the defendant's interpretation of that term.

Therefore, the court turns first to Interrogatory No. 2, where the plaintiff seeks the brand names of all tires produced by Hankook that utilized the same skim stock, wedge material, inner liner, and/or AO package as the accident tire. Because the court finds that "similar" tires are not tires that simply contain a similar component, the court will not order the defendant to respond to this interrogatory as it is written. However, the court will order the defendant to produce the

4

names of all tires produced by Hankook that are similar to the accident tire. This response shall be limited to those tires produced from 2000 to present.[1]

With Request for Production ("RFP") No. 15, plaintiff's counsel explained he wanted information related to other cases in which tread belt separation had occurred and where a driver lost control of his vehicle. The defendant responded that the only case responsive to the request was the *Morales-Cota* case out of Texas and a case with which both parties are familiar. Plaintiff's counsel responded that the defendant's response was insufficient because it assumed he sought information related only to cases involving tires identical to the accident tire. Plaintiff's counsel explained he wanted information related to accidents involving all passenger or light truck tires produced by Hankook back to 1997. The court finds the plaintiff's request entirely too broad. Forcing Hankook to collect volumes of information without any showing as to how those tires involved in those cases are similar to the accident tire for the purposes of this litigation is unduly burdensome and not likely to lead to the discovery of relevant information.

RFP 16: Here the plaintiff requested "incident reports, claims reports, or product liability reports," related to complaints of tread belt separation for Hankook Steel Radial Sport King A/T. The plaintiff also requested the same information for all tires produced with nylon overlays. The defendants responded that they have no such reports for the accident tire. As with all of their arguments, the defendants contended that information related to tires other than those similar to

---

[1]The court notes that the plaintiff typically asks for information dating back to 1996. During the hearing, the court asked why specifically the plaintiff went to 1996, and the response was essentially that 1996 was picked almost at random. Plaintiff's counsel explained why some responses may well be relevant as far back as the 1950's. Because fourteen years is six years before Hankook produced the accident tire, the court finds going back that far is unnecessary. Accordingly, the court will order most information produced as far back as 2000.

the accident tire was irrelevant. The court agrees, and finds the defendant's response satisfactory. The defendant responded it did not have any incident reports, claims reports, or product liability reports concerning the accident tire. As for information related to tires with nylon overlays, the court finds such information irrelevant and unlikely to lead to discoverable information. Plaintiff's counsel made it clear that it is her position that nylon overlays help prevent tread separation. Defense counsel responded that nylon overlays were developed for an entirely different purpose. The court finds that such arguments may be appropriate for a jury, but the court will not order the defendant to expend time and resources searching for such information. If the plaintiff has information supporting her argument, the jury will no doubt hear about it.

## Alternate Design Issues

Next, the plaintiff sought information related to the alternate designs and the defendant's knowledge of alternate designs. With Interrogatory No. 5, the plaintiff asked whether Hankook ever manufactured tires with nylon overlays, and if so, she requested information such as the model of those tires, dates and places of manufacture, and the purpose of the overlays. The defendant responded by referring to a deposition taken of the plaintiff's expert in a case out of South Carolina in which he explained he did not need any additional data to opine that utilizing a nylon overlay is a better design alternative.

It is undisputed that Hankook manufactures tires with nylon overlays. It is also undisputed that the accident tire did not contain nylon overlays. The plaintiff's expert will undoubtedly testify that nylon overlays are a feasible design alternative, and the court does not see how information from Hankook relating to each tire it manufactured with nylon overlays furthers anything. That is, the court does not find that a response to this interrogatory would lead

to discoverable information.

With Interrogatory No. 6, the plaintiff referred to the previous interrogatory and asked Hankook to provide information related to any of the tires it produced with nylon overlays. Specifically, the plaintiff wants information related to any accidents arising out of tread belt separation on tires with nylon overlays. Plaintiff's counsel stated he knew of only one in his entire experience, and defense counsel stated he knew of five. Accordingly, because the plaintiff clearly intends to argue that nylon overlays help prevent tread belt separation, the court finds the interrogatory is appropriate and orders the defendant to respond accordingly. However, the court finds that the defendant need only provide information concerning tires similar to the accident tire.

Interrogatory 7: Here the plaintiff explained during the hearing that he is looking for information related to changes made by Hankook to the belt wedges in the accident tire and similar tires. Plaintiff's counsel stated he knew Hankook had been "monkeying" with their belt wedges, and this interrogatory was designed to elucidate information concerning that behavior. As discussed *supra*, however, there is no evidence before the court that concerns "necking" or "polishing," or anything else to suggest a problem with the belt wedge. Consequently, the court will not order the defendant to respond to discovery related to an issue about which the plaintiff has no evidence to support his claim.

RFP 17: Here the plaintiff requests a list of tires manufactured by Hankook that contain nylon overlays. As with Interrogatory No. 5, the court does not see how such information will further anything. The plaintiff plans to argue the accident tire should have contained nylon overlays. Why the court should order Hankook to go to the time and expense of providing a list

7

of all the tires it manufactures with nylon overlays is unclear.  Accordingly, the court will not order a response to RFP 17.

RFP 18: Similar to Interrogatory No. 6, here the plaintiff seeks information related to "injuries, accidents, failures in service, malfunctions, or tread separations of tires manufactured by Hankook with nylon overlays."  And as with Interrogatory No. 6, the court orders Hankook to respond but only as to information related to tread separations with tires similar to the accident tire made since 2000.

## Notice of Tire Failures and/or Tread Belt Separation Issues

With Interrogatory No. 4, the plaintiff seeks information related to complaints that did not lead to litigation but involved tread separations.  The defendant responded that other than *Morales-Corta, et al. v. Hankook Tire Co., Ltd, et al.*, it is not aware of any additional claims involving the subject LT235/75R15 Sport King A/T tire.  Of course, this is not just a "similar" tire but the exact tire involved in the subject accident.  Accordingly, the court orders the defendant to respond to the interrogatory with any tires "similar" to the accident tire as well.

Interrogatory No. 8: Here the plaintiff seeks information compiled or studies done by Hankook concerning tread separation.  Specifically, plaintiff's counsel explained he believed the liner pattern marks in the accident tire are caused by old stock, and if this was a problem at Hankook, he believes there will be studies showing such.  The defendant responded that there is no such information or studies done related to the accident tire.  The court finds that if such information exists as to any similar tires from 2000 to present, the defendant shall produce that information.

Interrogatory 14: During the hearing defense counsel explained that Grant's report is their

8

position as to why pieces of the tire in question separated from the tire.

RFP 19: With this request the plaintiff is asking whether Hankook has made modifications to tires to alleviate tread belt separation, and if so, she wants the documents related to those modifications. Again, the court will order the defendant to produce any documents related to any modifications made to similar tires to alleviate tread belt separation from 2000 to present.

**Identities of People who Designed or Manufactured the Subject Tire and Manufacturing Practices in the Daejon, Korea Plant**

Next, the plaintiff sought information related to specific personnel at Hankook. With Interrogatory No. 13, the plaintiff stated during the hearing that he simply wants the name of the individual who was in charge of quality control in the area the accident tire was manufactured during the time the accident tire was manufactured. The court ordered the defendant to provide that information to the plaintiff, and the plaintiff explained that would satisfy Interrogatory No. 13 (a), (b), and (c). As to the remaining subparts of Interrogatory No. 13, the defendant stated he provided the name Mr. E.P. Hong as the individual who would be responsible and knowledgeable concerning the areas described.

Interrogatory 15: Here the plaintiff seeks downgrade reports from the plant where the accident tire was manufactured and the names of the Hankook employees responsible for the reports. Defense counsel responded that no downgrade reports exist for the period of time Hankook manufactured the accident tire. Defense counsel also described the interrogatory as a "fishing expedition," and the court agrees. Plaintiff's counsel stated he believes that perhaps Hankook used old materials and wants to know if this was a chronic problem. However, the

9

plaintiff has nothing to support his position that a chronic problem existed, and the court will not order wholesale discovery – without more – for her to find out.

Interrogatory 16: Here the plaintiff wants information related to downgrade reports for five years prior to manufacturing the accident tire. The defendant responded that such reports do not exist, and the court accepts this response.

Interrogatory 22: With interrogatory 22, the plaintiff asked for the identity of the first and second stage builders of the accident tire. Defense counsel explained that based on information from a label attached to the accident tire, they determined that Mr. J.B. Kim built it. The plaintiff wanted to know whether Mr. Kim was the first or second stage builder, and defense counsel explained that the label led them to Mr. Kim's name alone.

RFP 1: With this request, plaintiff's counsel explained during the hearing that he is looking for the Plant Practices Manual. The defendant responded to this request with approximately seventy pages of documents the plaintiff contends are only portions of the manual. For example, the plaintiff explained that the manual would contain information related to every aspect of the plant, including even the air conditioning system. Plaintiff's counsel then explained he did not need information related to items such as the air conditioning because it had nothing to do with his claim. However, according to the plaintiff, splicing does have something to do with his claim, and there would be information about splicing in the manual but that portion was not provided.

The court understands the plaintiff's position. However, looking to the request, the plaintiff did not indicate she was interested in only those areas related to her claim such as plant practices for splices. Indeed the request appears to seek specifications for every aspect of the

plant, including *"but not limited to"* much more. With such a broad request there is virtually no way to determine precisely what the plaintiff wanted. The defendant provided seventy pages of specifications. Had the plaintiff narrowed her request to areas relevant to the present litigation, perhaps the defendant would have responded in a manner more satisfactory to the plaintiff. Examining the overbroad request at this late stage, however, leaves the court with no choice but to deny the motion to compel as to this request.

RFP 2: With this request the plaintiff is seeking the repair standard operating manual. Defense counsel responded that there is no allegation in this action that the tire had been repaired, so such a manual would be irrelevant. Plaintiff's counsel responded to that argument that discovery could be had related to claims and defenses, and according to the plaintiff, the defense in this case relates to a nail in the tire. According to the plaintiff, Hankook may repair some of its tires in ways that could cause circumstances it will allege were caused by the nail. Specifically, the plaintiff wants to know whether Hankook repairs tires by punching holes to release unwanted air in specific areas of the tire. The court finds such information could lead to discoverable evidence, and understands the plaintiff may need such information to refute an anticipated defense. Accordingly, if Hankook did utilize the procedure described during the hearing to repair either the accident tire or similar tires between 2000 and present, it will produce any manuals or other documents related to that procedure.

RFP 3: With this request, the plaintiff seeks any videos, training tapes, etc. depicting Hankook's tire manufacturing process. The defendant responded that no tapes exist from the time period it manufactured the accident tire. Plaintiff's counsel responded that he, therefore, wanted the current one, and defense counsel responded it would be different than the one for

11

2002. Because the current tape would differ from the one made when Hankook manufactured the accident tire, the court finds it could not lead to discoverable evidence, and will not order it produced.

## Hankook Manufacturing and Quality Standards

Interrogatory 17: With this interrogatory, the plaintiff is asking for the name of Hankook's supplier for belt wire used in the accident tire. The defendant responded, explaining it was either Hyosung or Trefil Arbed Kiswire. Plaintiff's counsel argued he also wanted information related to the procedure or mechanism for coating belt wires in the accident tire with brass, and defense counsel responded that Hankook did not know the answer to that question. Defense counsel stated the plaintiff would need to get that information from the supplier.[2]

Interrogatory 18: Here the plaintiff is asking for the AO recipe, and defense counsel argued such information was a closely guarded trade secret. The court agrees with defense counsel, and finds that the recipe is a trade secret that will not be disclosed without further proof from the plaintiff showing its necessity.

Interrogatory 20: With interrogatory 20, the plaintiff asked for the air permeability standard or acceptable leak rate for the accident tire and/or "tires with similar inner liners." Defense counsel responded and provided the plaintiff with the IPR Standard for the accident tire. With that information, defense counsel explained the plaintiff can now purchase an exemplar tire and determine the leak rate for the accident tire herself. The court finds that the defendant's

---

[2]The court notes that plaintiff's counsel appeared incredulous after defendant's answer, and the court also finds it surprising that the tire manufacturer would have no knowledge as to how its supplier coated the belt wires it purchased. Should evidence later show otherwise, the court will address the issue at that time. The court orders defense counsel to inquire into this area once again.

response – along with the court's order related to RFP 20 – will be satisfactory.

Interrogatory 21: Similar to interrogatory 18, the plaintiff also sought the chemical composition of the brass utilized to coat the steel wires in the accident tire. Such information is a trade secret that will not be disclosed without further proof from the plaintiff showing its necessity.

RFP 22: This request seeks copies of air permeability testing data discussed in interrogatory 20. The defendant responded that they have produced the standard but have no testing data for the accident tire. Even with the understanding that the defendant has no data for the accident tire, the court is confident Hankook maintains this information for Sport King A/T's and any other similar tires. Therefore, whether the plaintiff can do the tests or not, the defendant has already done the tests, and the court finds the request a reasonable one. The court, therefore, orders the defendant to produce the data related to the air permeability standard or acceptable leak rate for Sport King A/T's or similar tires from 2000 to present.

RFP 28: With request for production 28, the plaintiff seeks information related to any analyses undertaken by Hankook to address alterations to its tires. Specifically, the plaintiff asks for analyses (including cost benefit analyses) related to making changes to the belt edge wedge, inner liner, or skim stock formula of Hankook tires. Because there is no evidence before the court that the plaintiff will show defects related to the belt edge wedge or the inner liner, the court finds that any analyses related to those areas would not lead to discoverable evidence. As to the skim stock formula, the plaintiff did put on evidence during the hearing that could support a claim of defective skim stock formula. Accordingly, if the defendant has any information related to analyses undertaken to alter the skim stock formula for the accident tire or any similar

tires from 2000 to present, it must produce that information.

The plaintiff also requested information related to analyses undertaken concerning the utilization of nylon overlays, but because the accident tire did not have nylon overlays, the court finds such a request will not lead to discoverable information.

RFP 29: Finally, the plaintiff requested all L-ray and cross-sectional analyses of steel belted radial tires related to tread belt separation, including, but not limited to, tires which have undergone road or wheel durability testing. The defendant responded that they have none for the accident tire, and the plaintiff asked for any related to Sport Kings. The court finds the request reasonable and orders the defendant to produce any L-rays or cross-sectional analyses of the accident tire or similar tires from 2000 to present related to tread belt separation, including, but not limited to tires which have undergone road or wheel durability testing.

IT IS, THEREFORE, ORDERED that the plaintiff's motion to compel Hankook Tire Mfg. Co., Ltd. to respond to interrogatories and requests for production of documents (# 163) is hereby GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that because the district judge recently continued the trial, deadlines will now be extended. The court will address these issues and others discussed in the district judge's December 14 order during the status conference set for January 10, 2011

SO ORDERED this the 5th day of January, 2011.

                                          /s/ David A. Sanders
                                          UNITED STATES MAGISTRATE JUDGE